City of Centralia v. Garland, head out, number 518-0439 Council, you may proceed Good morning Your Honor, Joe Dowling on behalf of the appellants in this case which obviously has been consolidated It's basically the land owners or lease owners, Garland, Opris, Manfucci, and I'm missing one off the top of my head, Doyle Before the court today is a case in which some rejectment was granted against the appellants As such, this case is basically governed by a lot of generalized standard principles of law One, of course, when you're granting some rejectment, your review is deniable And, of course, all of the evidence has to be construed in the light most favorable, in this case, the appellants Other general rules of law that I think are important in this case that bring us to what is a question of fact are the principles of statutory construction And, more specifically, limiting or restricting that construction against the municipality Because in this particular case, the municipality, Centralia, is trying to exert and exercise extraterritorial jurisdiction As such, they have to have a specific grant of authority to, in fact, use that authority outside of their corporate limits And those limits and that authority has to be strictly construed against them Additionally, there is a case that we cited, which is Huggins, which indicates that if the cities are trying to use water for waterworks or water supply purposes They must comply with one of the statutes dealing with waterworks And, more specifically, this is a case where there is no general jurisdictional grant under Section 7-4-2 of the Municipal Code Because that is simply a generalized statute that says that the municipality may use its authority and regulate the property both within and outside of its corporate limits the same However, that is limited by the specific grant of jurisdictional authority or not Either found in 7-4-4, which limits their authority to within three miles of the corporate limits Or, more relevant, is the provisions of 11-125-2 All of that sets the stage for the material questions of fact in this case As the Court is aware, there is a local ordinance that was passed by the City of Centralia Essentially requiring the owners of the property or the leaseholders, if they wanted to have a boat dock on Lake Centralia To register and build a boat dock in a certain manner So the first question that is raised is whether or not the city has the authority to pass that ordinance in the first place So you have to look at their jurisdictional or extraterritorial jurisdictional authority In this particular case, it is under 11-125-2 Which specifically provides that they may acquire and hold property for waterworks or water supply purposes The issue in this case here is the evidence in the record would show that the Lake Centralia was purchased by Centralia in 1926 I thought it was 1923 You're correct, sir. I believe the ordinance was passed then and the deed was transferred over But the problem becomes, at least the evidence in the record then shows that between 1923 and 1980 There at least is a question as to whether or not Lake Centralia or water from Lake Centralia was being used for waterworks or water supply purposes Schwartz in his deposition testified that he believed that there was some pipes that were run from Lake Centralia To the Community Beach Reservoir, which was the actual source of water for Lake Centralia There may have been simply a ditch that was run. He could not remember And there was really no evidentiary basis for that However, he then testified further that Community Beach Reservoir went offline sometime in the 40s And at that point in time, they used Lake Centralia, used Raccoon Lake as their source of water There is a pump house in Raccoon Lake. There are water lines from that pump house straight into the water department and water plant of Centralia They're using that for their water source There was some testimony as to whether or not Lake Centralia was considered a backup water source That's what they're trying to say Now the statute, quite truthfully, is silent as to whether or not there is a primary water source, a secondary water source, a tertiary, and so on But the evidence, at least the testimony from Mr. Schwartz, would indicate that this may have been a secondary water source However, what's interesting is that in Lake Centralia, there was a pump house in the lake at least up until the 80s So that would support Mr. Schwartz's testimony that it was probably a secondary water source to Raccoon Lake But in order to get water out of Lake Centralia to Raccoon Lake, it literally is being pumped uphill In the 80s, it's clear from Schwartz's testimony that Lake Centralia was never and no longer being used as a water source The testimony is that Carlisle Lake came online to start supporting their water needs There's a pump house there, there's water lines that run straight into the water plant at Centralia Raccoon Lake is their secondary source There's a pump house there, there's water lines running straight into the water plant However, in Lake Centralia, the pump house... Don't they have more than one secondary source? Again, the statute is silent, so I don't know where... And given the fact that you have to construe the statute strictly against the municipality When they're exercising an extraterritorial jurisdiction The case law that we cited specifically says that unless there's a specific grant of authority Then it's presumed that they don't have that authority in the first place But again, the statute is silent But the more salient fact is that the pump house that was there And the water lines that were there have been removed And they were removed in the 80s, and there's no dispute about that So the question becomes, how are you using it as a water source at all? Much less a tertiary water source So if they cannot use it as a water source, or they are not using it as a water source Under the statute, they cannot continue to hold Lake Centralia Because their extraterritorial grant of authority was to acquire and hold And quite truthfully, that has been the law since 1872 If you were to take and trace 11-125-2 from today back to its inception The acquire and hold language is present in that statute throughout Additionally what's present throughout the history of that statute Is that any authority, if they were to be using it as a water source The authority that they have is to limit their regulation or their control Over the water source to the prevention or pollution of injury or damage to the water source So that raises the question as to whether or not If you were to find it was still being used as a water source in some manner For water supply purposes, how does a boat dock registration ordinance Prevent pollution or injury to the source of water? That's a material question of that in itself Under 7, and to maybe digress a little bit and build upon it Under 7-4-4, which is also under the general grants of authority That limits their authority to within 3 miles And prevents them from doing any zoning whatsoever Or otherwise restricting the use So that would even put a bigger restriction on the city's ability to pass a general ordinance Which is nothing more than like a license plate fee that cities used to have a long time ago Register your car, pay $25 Register your boat dock, pay $500 every year It doesn't prevent injury or pollution to the water source So on those bases alone, there are material questions of fact That would have prevented a summer judgment being granted in favor of Centralia In favor of Centralia Additionally, I know there were points that were raised First time on appeal, of course, is the standing issue of Mr. Garland And the other landowners to bring this case They were sued under the cases that I cited There was a question of whether or not the Mitchell case or the Avery case The 1931 decisions from the Supreme Court How do you reconcile those? And quite truthfully, I believe they are both reconcilable They were issued actually on the exact same day, October 23, 1931 One was by Judge Dunn, one was by Judge Dion But both of them hold that the challenge to whether or not the act of a municipality is ultraviolet Ultraviolet virus can be raised by a taxpayer or by a party who has been injured In this particular case, the landowners or leaseholders Who are wanting to register or not register a boat dock and pay $500 Are in fact not only taxpayers, they are being injured by the ordinance itself They have standing I would also make a side note that the fact that this was raised first time on an appeal On the reply brief would indicate that they have actually waived that argument That standing argument, which is really what Section 990 of Dillon's Commentaries on the Law is Should have been raised at the trial court, and it was not Ultimately, I believe the court erred in relying upon the points that they relied upon One, of course, was the original act of incorporation for Centralia, which was 1859 And that was in fact superseded by their election in 1893 To come under the parameters of the Cities and Villages Act Which was the precursor to the current municipal code The other, of course, is they relied upon Section 7-4-2, which we've already discussed They also relied upon the case of Mackin v. City of Salem Now Mackin is not applicable in that particular case It was an industrial project bond act legislation they were going over And it actually raised more questions of whether or not there was a taking And whether or not there was due process And in protection under the law, given the fact that this was the lease back of the property Under the Bond Act and whether or not that was proper That doesn't have application here What the court glopped onto, or more importantly what Centralia glopped onto Was one phrase in the dissenting opinion in which it cited 7-4-2 That said this is a general power that was granted in all municipalities However, that general power is then restricted by the more specific legislation of 7-4-4 And more importantly 11-125-2 I would request that the court reverse the grant of summary judgment I think the court can make a decision as to whether or not Because there is some statutory interpretation Does Centralia still have the right to hold the property if it's not being used as a water supply purpose Or water supply source And then the next question is does the ordinance itself prevent injury or pollution to the land If it's found to be a water source I would just ask that it be reversed, your honor Thank you Your honors, I'm John Long, I'm from O'Fallon I also have an office in New Baden from the firm of Brooker, Brinke and Long And I'm here representing the city of Centralia In analyzing this for myself I decided there were five questions that could and should be asked And I thought maybe I would go through these questions And tell the court the answers that I have I've already written them in my brief And I'll just go over them briefly in my little argument First question was, was this land, named Lake Centralia Conveyed to the city of Centralia And there's absolutely no doubt that it was conveyed Now I'm setting aside for the moment the question of whether the conveyance was supposedly invalid Or whether it was valid But there's no doubt that it was conveyed Because in the hearing on the motion for summary judgment Mr. Dowling himself made several statements Indicating that he and the defendants recognized that it had been conveyed He talked about the fact that the city of Centralia had purchased the lake from I think he said the Centralia Water Department It's actually the Centralia Water Supply Company I mean that was a minor, that's really nowhere to be concerned about But it was the Centralia Water Supply Company And in the counterclaims that all the defendants filed, paragraphs 2 and 3 They specifically state that the purchase occurred on or by August 27th of 1926 As a matter of fact, that's exactly the date that's on the deed Now the deed's attached as Exhibit A to our motion to take judicial notice I know the court's taken that motion with the case So I'm going to refer to the deed But I understand that if the court decides not to take judicial notice Then my reference to the deed's perhaps not appropriate But if the court does take judicial notice of that It's easy to see that the deed was signed It was dated August 27th, 1926 Recorded October 22nd of 1926 So the next question is Did the deed itself contain Is that deed in the record? Well the deed's not in the record yet I mean it's in the record in the sense of being attached to my motion to take judicial notice But it's not in the record before the trial court Then the second question Now this can be answered only if the court does decide to take judicial notice of the deed And that is, did the deed itself contain an explicit possibility of revert? And it doesn't You read through the deed, there was the words of conveyance Described the land that the Centralia Water Supply Company had gathered in order to create Lake Centralia They deeded the whole thing over to the city of Centralia The third question is Have the defendants cited any case or statute Indicating that a possibility of reverter Should be implied in a municipality's purchase of land outside the corporate limits Because that's their whole argument here Their argument is, just to recapitulate what Mr. Darling has said Is that in order to have made a valid purchase here of the city of Centralia Had to purchase this for a waterworks or for some other reason specifically listed in the statutes And it had to continue to use it for a waterworks And at any time in the future, no matter how distant It ceased to use it as a waterworks Then the lake supposedly should revert Well, they've not cited any case, no case, no statute Which says that that's the law I mean, that's their interpretation they've placed on the statute But there is absolutely no case which says that to this point In fact, the one case that seems to bear most closely on this question of whether a reversion should occur Is the case of Mills versus Forest Preserve District of Chicago That we've cited, that's the 1931 decision In that decision, there was a I don't want to get into the facts too deeply But there was a gentleman that sold land to the Forest Preserve District Decided he wanted to get it back He wanted to refund the money and get the land back And his argument was that the Forest Preserve District's purchase was ultra-virus It was outside of the scope of its authority And both this plaintiff, Mills, and the Forest Preserve District Admitted to the court that it was ultra-virus The Onox Supreme Court noted the fact that this was an ultra-virus purchase On the part of the Forest Preserve District And what the Onox Supreme Court said was Essentially, it doesn't matter Because only the State of Illinois has the authority to question that It's not even Mr. Mills, the person who was involved in the transaction, could question it And in stating that no one other than the State of Illinois could question it They cited Dillon on Municipal Law, Section 990 That I've quoted work And Dillon specifically says that That only the State where the municipality is located Can question whether a city has acquired land for a purpose Other than that for which it was authorized to acquire the land And there's no subsequent case that I've found That certainly no Onox Supreme Court case There have been two appellate court decisions that have considered it But there's no Onox Supreme Court case which changes that There is a Supreme Court case No, excuse me, an appellate court case I can't remember the name, it involves the Liberty Bill I can come up with the site here perhaps in a moment But the appellate court there Said that possibly a taxpayer Then not only the State, but a taxpayer in a taxpayer suit Could possibly question the propriety of a city's purchase of some land But that suggests that you have to be a taxpayer Of the body in question There's no indication in the record here That any of these people were taxpayers of the City of Centralia In fact, they apparently all live outside the City of Centralia That's because we're talking about land here that's outside the corporate limits So the only statement by the Onox Supreme Court that I've been able to find Is that only the State of Illinois can question this Mr. Dowling's rebuttal to this was the case of Avery Which was decided on the same day That case did not involve an ultra-virus question with respect to a city The ultra-virus question there concerned a corporation And so there's really nothing in the Avery decision Which changes what the Onox Supreme Court said In Mills v. Ford Preserve District of Chicago Which is that if somebody's to question now Whether the City of Centralia has the right to hold and possess And own Lake Centralia It's the State of Illinois It's not any private party And it's not any of these four defendants What about counsel setting aside the issue Of whether or not the city has the right to own the lake At this point the question of the city's extraterritorial jurisdiction Over counsel's clients Section 7-4-2 of the municipal code addresses that explicitly That's the only section in the statute anyway Which talks about the authority of a municipality with respect to land Outside the corporate limits When Jay cites section 7-4-4 As supposedly somehow countering that He's mistaken because 7-4-4 is the general statement About the authority that the city has Over waters within or bordering upon the municipality That says nothing at all about who owns the waters I have to say I don't exactly understand what 7-4-4 is getting at I think maybe it had to do with the City of Chicago Perhaps they wanted to make sure that Chicago had jurisdiction Out into Lake Michigan I'm just not sure But if you look at 7-4-4 It says nothing at all about the question of whether the city owns the land It's just talking about the jurisdiction that the city has Over waters within or bordering upon the municipality To the extent of three miles beyond the corporate limits But not beyond the limits of the state So that's not contradictory at all Not in conflict at all with section 7-4-2 Which starts out by saying all property Not some, not most All All property which is One, owned by a municipality And two, lies outside the corporate limits of the municipality And three, does not lie within the corporate limits of any municipality Shall be subject to the ordinances, control and jurisdiction of the municipality in all respects The same as property owned by the municipality Which lies within the corporate limits thereof This is the only statement And I'm repeating myself here, I apologize for that The only statement in all of the Illinois Code Of the Illinois Compiled Statutes That addresses this issue So it's really, it's illusory to say That section 7-4-4 Conflicts with it because it doesn't 7-4-4 simply does not involve the question Of land that's owned by the municipality So in order to decide whether the city Whether Centralia could exercise jurisdiction over Lake Centralia The first question is whether it owns it And of course it's obvious from the facts in this case And I've got some more to say about that But it's obvious that the city owns it So that takes care of part one The defendants haven't even made an issue In this case out of parts two and three They don't argue that the land is outside the city limits They don't argue that it's not within the They don't say that it's within the limits of some other municipalities So points two and three are admitted And point one, it's obvious the answer to point one Is that the city of Centralia does own it Because, and this is the question that Judge McKinney asked At the hearing on the motion for summary judgment If the city of Centralia doesn't own it, who owns it? I mean it has to be the city of Centralia Because Mr. Dowling's argument on this point was That when the condition was broken This supposed condition, which I'll discuss that one too We don't think there was any kind of condition on this But when the supposed condition was broken in the 1980s This lake supposedly reverted to the Centralia Water Supply Company Well there are two problems with that The first is that the Rights of Entry and Reentry Act Which I think of as the Possibility of Reverter Act 765 ILCS 330 Says in section 4 that a possibility of reverter expires after 40 years That's the first problem This deed was executed August 27, 1926 40 years puts it at August 27, 1966 The possibility of reverter, even if it existed Which we don't think it ever existed Even if it existed, expired no later than August 27, 1966 Another problem is section 3 of that act Says that if a corporation holds a possibility of reverter And the corporation is dissolved The possibility of reverter disappears Well one of the things that we submitted here Again this is, I don't know that the court will decide to take judicial notice But I submitted as Exhibit B attached to our motion to take judicial notice The records, the certified records from the Illinois State Archives Indicating that the Centralia Water Supply Company Was dissolved on November 29, 1926 Within a couple of months after they did the deed It's easy to understand why they would have dissolved Because their purpose was done I mean they had acquired the land for the lake, made the lake They conveyed the lake to the city of Centralia They had no more purpose to serve so they dissolved So under section 3 of that act The possibility of reverter, if it existed Which again we don't think it ever did exist Ended on the date of its dissolution Which was November 29, 1926 So there was no place for this and no entity To which Lake Centralia could revert And that's why it's just, the argument here I'm tempted to say it doesn't hold water It really doesn't, it just does not make any sense But I don't want to belabor that too much But those were the facts, there's no chance There's no chance that a possibility of reverter Could have existed as of the time of trial in this case For which a condition broken would cause it to revert To anybody, because then there's no entity To which Lake Centralia could return It's been the city of Centralia for well since 1926 And it is today, it was at the time of the hearing And it will continue to be With that council going to this ownership From reading the briefs I understand The city took it upon itself to build a new dock and boat ramp I think in 2016 or 2017 That's in the record, that is And I believe it's also in the record that the city maintains The area of mowing it and taking care of it, correct? That's also in the record So one of the points that Judge McHaney made Is that couldn't the city buy this and hold it Because it's a nice place to pitch It's obvious from the record that it's a place Where public recreation goes on This is relevant because the Illinois Supreme Court In People X Girl City of Salem vs. McMackin said That unless a city is expressly forbidden To purchase land outside its corporate limits It can purchase land outside its corporate limits For any legitimate purpose And this court quoted that and followed it And it's a decision in O'Fallon Development Company Incorporated vs. City of O'Fallon Now in order to deal with the problem that that language creates Jay suggests that the Illinois Supreme Court Overruled that sub salentio in the NRA Chicago flood litigation Because in that case the court decided that The formally recognized distinction between Proprietary functions of a government and governmental functions That was no longer to be recognized or used But there was some discussion in the McMackin case About the fact that a proprietary function Of the city of Salem in that situation But I would say that's more the reach That's a huge reach to say that The Illinois Supreme Court somehow Without even referring to the McMackin case Without talking at all about the ability The right of a corporation to purchase land Outside its corporate limits That reversed what it had held In the People X Girl City of Salem vs. McMackin It simply didn't That is still good law That if there's no express prohibition And it's for a legitimate purpose The city can purchase the land Including I would suggest As a place for people to go water skating Or use their boats or go fishing or whatever And again counsel Wouldn't that not fall under For other purposes that gives the authority To purchase the property, correct? I mean expressly given by the statute Under section 4 States that the city can purchase and hold real property It says several things But it says beyond the city for other purposes Are you referring to section 7-4-2 or 7-4-4? I'm thinking it's article 1 section 4 Okay you're talking about I see you're talking about the incorporating act Correct Oh absolutely Because that's a very broad grant of power to the city And one of the questions here is Whether for this case the city should be considered As having been incorporated As still being incorporated under the 1859 act Or under the cities and villages act The way the defendants presented this below Was that the cities and villages act Was self-expectuating That it somehow automatically Eliminated the cities And changed the cities incorporation under 1859 That's not correct It took an election for the city The city had to decide to do it I don't know how to address this I don't want to be conceding anything But I will say Let me put it this way Jay has submitted a supplemental appendix Which documents that Rather persuasively appear to suggest That the city did in fact have that election On May 4th 1893 But the way it was presented At the trial below Was that the adoption of the 1872 act Automatically eliminated the cities incorporation Under the 1859 act Which is not correct That's the theory they tried on That's the point we made in our brief So they're stuck with that I think That's up to the court to decide Whether it wants to take judicial notice Of the other documents that Jay submitted Thank you Thanks counsel Rebut Thank you Both parties in essence have asked this court To take judicial notice of something Obviously I'm asking you to take judicial notice Of the fact that there was an election That the charter is no longer valid The 1859 charter is no longer valid For the city of Centralia And under the cities and villages act And ultimately up to the municipal code As far as the municipal code goes With 7-4-2 in the county of Will Versus the city of Naperville They specifically found and it's in my brief That section 7-4-2 of the municipal code Is a general provision describing The jurisdictional scope of a municipality's authority The powers of the municipality Are set forth in article 11 of the code So the fact that the city here Wants to rely upon that same general provision All we can regulate in the land that we own Inside or outside of the city limits In any way in the same manner As if it was lying within the city limits Is misleading in the sense that That is a general provision We still have to look at article 11 powers To say whether or not that general power Has been limited Further under section 7-4-4 That is a limitation on the 7-4-2 powers That falls within the same territorial jurisdiction article Of the municipal code When you're looking at 11-125-2 That gives you the specific powers That the city had with regard to Whether or not they could own and hold Or acquire and hold And the emphasis isn't on the purchase But on the holding of it Because then that gets into the question reverted I'm going to get back to that in a moment though please Because the other aspect that Mr. Long raised Of course he tried to distinguish Avery from Mills But in Avery it was an ultra-virus act case It was basically a contract action And the court specifically found That the question of ultra-virus Or stated the question of ultra-virus May be raised only by the state Or by a party who has suffered the invasion of some right By the transgression of corporate power And between the Avery case And then the Mills case In Mills they cited that the question Whether or not property in possession of a city Is used for purposes within its corporate powers Cannot be raised collaterally nor at all Except by the state or a taxpayer Or some person authorized to act In behalf of its inhabitants Those are consistent And in Mills and Avery They both said that the And maybe Mills more so But they were saying that general corporate power That ultra-virus act power Only applied to private corporations And the court said no It goes public corporations as well So in this particular case You have the inhabitants You have the people that are being sued As the inter-parties They have the right to defend themselves They have the right to raise any issue Including whether or not the city has the authority To do what it's doing in the first place With regard to the 1125-2 provision And the right of reverter When you're talking about acquire and hold It's the hold issue And under the reverter section That was quoted by Mr. Long It's neither the possibilities of reverter Nor the rights of entry or re-entry For breach of a condition subsequent The condition subsequent in this case is The holding for water supply purposes When it's breached It cannot be longer than 40 years From the date of the creation of that condition Or the possibility of reverter So until they breach the condition subsequent There's no right of reverter Once they breach it You've got 40 years from that breach Of that condition subsequent Within which to bring the reverter Or to have the land revert In this particular case The reverter acts like an abandonment Or the stopping of using the land For its purpose under 1125-2 Acts much like an abandonment of municipal property And it reverts back to Or it essentially goes to the adjoining landowners At that point The easy analogy or example is If you have a city If you have a street or an alley That the city decides to vacate The land then goes back That city or alley gets divided back To the adjoining landowners On either side of the street That's the same thing that is going on here They've abandoned their ability to use it Or excuse me They've abandoned it to acquire And hold the lakes and trillia That being said Again If the court were to find that Their use of it is still proper Under 1125-2 The question then becomes Is the ordinance that they passed For boat dock registration An ordinance that prevents Pollution or injury to a water source And that is a question of fact For which remand would be appropriate Thank you Thank you counsel for your arguments The court will take this matter into its eyes When we receive the deforce